## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 25-CR-00158-JB |
| | ) | |
| KELLEY JAMES WILLIAMSON | | |

## PLEA AGREEMENT

The defendant, **KELLEY JAMES WILLIAMSON**, represented by her counsel, and the United States of America have reached a plea agreement in this case, pursuant to Rule 11 of the Federal Rules of Criminal Procedure, the terms and conditions of which are as follows:

## RIGHTS OF THE DEFENDANT

1.      The defendant understands her rights as follows:

      a.      To be represented by an attorney;

      b.      To plead not guilty;

      c.      To have a trial by an impartial jury;

      d.      To confront and cross-examine witnesses and to call witnesses and produce other evidence in her defense; and

      e.      To not be compelled to incriminate herself.

## WAIVER OF RIGHTS AND PLEA OF GUILTY

2.      The defendant waives rights b through e, listed above, and pleads guilty to Counts One and Two of the Information, charging violations of Title 18, United States Code, Section 1344(2), Bank Fraud, and Title 18, United States Code, Section 1028A(a)(1), Aggravated Identity Theft.

1

Rev. 9/2021

3.  The defendant understands that the statements she makes under oath in the plea of guilty must be completely truthful and that she can be prosecuted for making false statements or perjury, or receive a perjury enhancement at sentencing, for any false statements she makes intentionally in this plea of guilty.

4.  The defendant expects the Court to rely upon her statements here and her response to any questions that she may be asked during the guilty plea hearing.

5.  The defendant is not under the influence of alcohol, drugs, or narcotics. She is certain that she is in full possession of her senses and is mentally competent to understand this Plea Agreement and the guilty plea hearing which will follow.

6.  The defendant has had the benefit of legal counsel in negotiating this Plea Agreement. She has discussed the facts of the case with her attorney, and her attorney has explained to the defendant the essential legal elements of the criminal charges that have been brought against her. The defendant's attorney has also explained to the defendant the attorney's understanding of the United States' evidence and the law as it relates to the facts of her offenses.

7.  The defendant understands that the United States has the burden of proving each of the legal elements of the criminal charges beyond a reasonable doubt. The defendant and her counsel have discussed possible defenses to the charges. The defendant believes that her attorney has represented her faithfully, skillfully, and diligently, and she is completely satisfied with the legal advice of her attorney.

8.  A separate document, entitled Factual Resume, will be submitted to the Court as evidence at the guilty plea hearing. The Factual Resume is incorporated by reference into this Plea Agreement. The defendant and the United States agree that

2

the Factual Resume is true and correct.  Alterations to the Plea Agreement or Factual Resume initialed only by the defendant and her counsel are not part of this agreement and are not agreed to by the United States.

9.  This plea of guilty is freely and voluntarily made and is not the result of force, threats, promises, or representations, apart from those representations set forth in this Plea Agreement.  There have been no promises from anyone as to the particular sentence that the Court will impose.  The defendant is pleading guilty because she is guilty.

10.  The defendant also knowingly and voluntarily waives all rights, whether asserted directly or through a representative, to receive from the United States after sentencing any further records, reports, or documents pertaining to the investigation or prosecution of this matter.  This waiver includes, but is not limited to, rights under the Freedom of Information Act and the Privacy Act of 1974.

### PENALTY

11.  The maximum penalty the Court could impose as to Count One of the Information is:

a.  Thirty (30) years' imprisonment;

b.  A fine not to exceed $1,000,000;

c.  A term of supervised release of five (5) years, which would follow any term of imprisonment.  If the defendant violates the conditions of supervised release, she could be imprisoned for the entire term of supervised release;

d.  A mandatory special assessment of $100.00; and

e.  Such restitution as may be ordered by the Court.

Rev. 9/2021

12. The maximum penalty the Court could impose as to Count Two of the Information is:

    a.    A mandatory term of two (2) years' imprisonment, which must run consecutively to any other term of imprisonment imposed;

    b.    A fine not to exceed $250,000;

    c.    A term of supervised release of one (1) year, which would follow any term of imprisonment. If the defendant violates the conditions of supervised release, she could be imprisoned for the entire term of supervised release;

    d.    A mandatory special assessment of $100.00; and

    e.    Such restitution as may be ordered by the Court.

## SENTENCING

13. The Court will impose the sentence in this case. The United States Sentencing Guidelines are advisory and do not bind the Court. The defendant has reviewed the application of the Guidelines with her attorney and understands that no one can predict with certainty what the sentencing range will be in this case until after a pre-sentence investigation has been completed and the Court has ruled on the results of that investigation. The defendant understands that at sentencing, the Court may not necessarily sentence the defendant in accordance with the Guidelines. The defendant understands that she will not be allowed to withdraw her guilty plea if the advisory guideline range is higher than expected, or if the Court departs or varies from the advisory guideline range.

14. The defendant understands that this Plea Agreement does not create any right to be sentenced in accordance with the Sentencing Guidelines, or below or within any

particular guideline range, and fully understands that determination of the sentencing range or guideline level, or the actual sentence imposed, is solely the discretion of the Court.

15. The United States will provide all relevant sentencing information to the Probation Office for purposes of the pre-sentence investigation. Relevant sentencing information includes, but is not limited to, all facts and circumstances of this case and information concerning the defendant's conduct and background.

16. Both the defendant and the United States are free to allocute fully at the time of sentencing.

17. The defendant agrees to tender $200.00 to the U.S. District Court Clerk in satisfaction of the mandatory special assessment in this case. The United States reserves the right to withdraw any favorable recommendations it may agree to within this document if the defendant fails to pay the special assessment prior to or at the time of her sentencing.

## **RESTITUTION**

18. Pursuant to 18 U.S.C. §§ 3556 and 3663A, restitution is mandatory. The defendant agrees to make full restitution to the victims in the amount of $1,868,190.85. More specifically, restitution of $1,645,690.85 is to be paid to Company A, and $222,500.00 is to be paid to Company A-1, whose identifying information and address is on file with the Court, which accounts for all relevant conduct regardless of whether it relates to the counts of conviction.

Rev. 9/2021

## FORFEITURE

19.    The defendant agrees to forfeit to the United States any right, title, and interest in all assets subject to forfeiture under the notice of forfeiture contained in the charging document, including property specified in any bill of particulars and property previously seized by the government for administrative, civil, or criminal forfeiture. The defendant further consents to the filing of a motion for a preliminary order forfeiting such property and any dollar amount specified in the notice of forfeiture or bill of particulars, and the defendant confesses the requisite nexus between the property and the charge of the conviction. The defendant hereby withdraws any petition for remission or claim for such property for such property and further waives any right to contest or appeal the government's forfeiture proceedings for any reason, including on grounds that the forfeiture constitutes an unconstitutionally excessive fine or punishment, and in any manner, including by claim, petition, appeal or collateral attack.

## FINANCIAL OBLIGATIONS

20.    The Defendant expressly authorizes the U.S. Attorney's Office to obtain a credit report to evaluate the Defendant's ability to satisfy any financial obligation imposed by the Court. To facilitate the collection of financial obligations to be imposed in connection with this prosecution, the Defendant agrees to disclose fully all assets in which the Defendant has any interest or over which the Defendant exercises control, directly or indirectly, including those held by a spouse, nominee or other third party.

6

Rev. 9/2021

## UNITED STATES' OBLIGATIONS

21.     The United States will not bring any additional charges against the defendant related to the facts underlying the Information and will move to dismiss any remaining charges against the defendant once sentence is imposed in this case. This agreement is limited to the United States Attorney's Office for the Southern District of Alabama and does not bind any other federal, state, or local prosecuting authorities.

22.     The United States will recommend to the Court that the defendant be sentenced at the low end of the advisory sentencing guideline range as determined by the Court.

## APPLICATION OF USSG § 5K1.1 AND/OR FED. R. CRIM. P. 35

23.     The defendant understands and agrees that she has no right to cooperate, and that the decision whether to allow her to cooperate is reserved solely to the United States in the exercise of its discretion. If the United States agrees to allow the defendant to cooperate, and if the defendant agrees to cooperate, the following terms and conditions apply:

    a. The defendant shall fully, completely, and truthfully respond to all questions put to her by law enforcement authorities regarding the underlying facts of the offenses with which she is charged, as well as the underlying facts of any criminal offense(s), state or federal, of which she has information or knowledge.

    b. The defendant acknowledges that she understands that she shall provide truthful and complete information regarding any offense about which she has knowledge or information regardless of whether law enforcement

7

authorities question her specifically about any such offense. This provision requires the defendant to divulge all information available to her even when law enforcement authorities do not know about the defendant's involvement, knowledge or information relating to any particular offense. This requirement extends to all persons about whom the defendant has such knowledge or information.

c. The defendant agrees to cooperate completely with all law enforcement authorities in any matters to which her cooperation may be deemed relevant by any law enforcement authority. The defendant agrees to fully comply with all instructions from law enforcement authorities regarding the specific assistance she shall provide. This includes, but is not limited to, consenting to monitored and/or recorded telephone conversations, participating in undercover operations, testifying completely and truthfully before any grand jury, at any pre-trial proceeding, during any trial, and any post-trial proceeding.

d. If the United States deems it necessary, the defendant may be required to take a polygraph examination(s) which will be administered by a government polygrapher. The defendant agrees that the results of any polygraph examination may be used by the United States in its evaluation of whether there has been substantial assistance and are admissible at sentencing to rebut an assertion by the defendant of bad faith or unconstitutional motive on the part of the United States.

8

e. The defendant agrees to turn over to the United States all documents, tapes and other tangible objects which are in her possession or under her control and which are relevant to her participation in and knowledge of criminal activities, regardless of whether it relates to the charged offense. This obligation is a continuing one and includes materials that the defendant may acquire, obtain or have access to after the execution of this agreement.

f. The defendant also agrees to identify the assets of any other person which were obtained through or facilitated the defendant's illegal activities or the illegal activities of another.

g. If the defendant provides full, complete, truthful and substantial cooperation to the United States, which results in substantial assistance to the United States in the investigation or prosecution of another criminal offense, a decision specifically reserved by the United States in the exercise of its sole discretion, then the United States agrees to move for a downward departure in accordance with Section 5K1.1 of the United States Sentencing Guidelines or Rule 35 of the Federal Rules of Criminal Procedure, whichever the United States deems applicable. The United States specifically reserves the right to make the decision relating to the extent of any such departure request made under this agreement based upon its evaluation of the nature and extent of the defendant's cooperation. The defendant understands that the United States will make no representation or promise with regard to the exact amount of reduction, if any, the United States might make in the event that it determines that the defendant has

9

provided substantial assistance. The defendant understands that a mere interview with law enforcement authorities does not constitute substantial assistance. The defendant also understands that, should she provide untruthful information to the United States at any time, or fail to disclose material facts to the United States at any time, or commits a new criminal offense, the United States will not make a motion for downward departure. If the defendant's effort to cooperate with the United States does not amount to substantial assistance as determined solely by the United States, the United States agrees to recommend that the defendant receive a sentence at the low end of the advisory guideline range.

h. The United States and the defendant agree that any breach of this agreement by the defendant, including but not limited to committing a new offense, failing to cooperate, intentionally withholding information, giving false information, committing perjury, failing to identify assets obtained by her from her illegal activities or obtained by others associated with her or of which she has knowledge, refusing to take a polygraph examination, failing a polygraph examination, or refusing to testify before the grand jury or at any judicial proceeding, would:

   (1) permit the United States to reinstate and proceed with prosecution on any other charges arising from the matters underlying the Information; and

   (2) permit the United States to initiate and proceed with the prosecution on any other charges arising from a breach of

10

this agreement. The United States will not be limited, in any respect, in the use it may make against the defendant of any information provided by the defendant during her breached cooperation. Such breach will constitute a waiver of any claim the defendant could make under the United States Constitution, the Federal Rules of Evidence, the Federal Rules of Criminal Procedure, or any statute or case law by which the defendant seeks to suppress the use of such information, or any evidence derived from such information.

i.  Nothing in this agreement shall protect the defendant in any way from prosecution for any offense committed after the date of this agreement, including perjury, false declaration, false statement, and obstruction of justice, should the defendant commit any of these offenses during her cooperation. The defendant acknowledges and agrees that the information that she discloses to the United States pursuant to this agreement may be used against her in any such prosecution.

j.  The United States and the defendant agree that the defendant will continue her cooperation even after she is sentenced in the instant matter. Her failure to continue her cooperation will constitute a breach of this agreement, and the defendant agrees that under such conditions, the United States will be free to reinstate the charges and the prosecution of the charges in the Information, which are to be dismissed in accordance with this agreement.

Rev. 9/2021

Under these circumstances, the defendant expressly waives any rights she may have under the statute of limitations and the speedy trial provisions.

## LIMITED WAIVER OF RIGHT TO APPEAL AND WAIVER OF COLLATERAL ATTACK

24.     As part of the bargained-for exchange represented in this plea agreement, and subject to the limited exceptions below, the defendant knowingly and voluntarily waives the right to file any direct appeal or any collateral attack, including a motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255. Accordingly, the defendant will not challenge her guilty plea, conviction, or sentence in any district court or appellate court proceedings.

      a.    **EXCEPTIONS.** The defendant reserves the right to timely file a direct appeal challenging:

      (1)    any sentence imposed in excess of the statutory maximum;

      (2)    any sentence which constitutes an upward departure or variance from the advisory guideline range.

The defendant also reserves the right to claim ineffective assistance of counsel in a direct appeal or § 2255 motion.

25.     If the United States files a notice of appeal and such appeal is authorized by the Solicitor General, the defendant is released from the appellate waiver.

26.     The defendant further reserves the right to timely move the district court for an amended sentence under 18 U.S.C. § 3582 in the event of a future retroactive amendment to the Sentencing Guidelines which would affect the sentence.

Rev. 9/2021

27. If the defendant receives a sentence within or below the advisory guideline range, this plea agreement shall serve as the defendant's express directive to defense counsel to timely file a "Notice of Non-Appeal" following sentencing, signed by the defendant.

## VIOLATION OF AGREEMENT

28. The defendant understands that if she breaches any provision of this Plea Agreement, the United States will be free from any obligations imposed by this agreement, but all provisions of the agreement remain enforceable against the defendant. In the exercise of its discretion, the United States will be free to prosecute the defendant on any charges of which it has knowledge. In such event, the defendant agrees not to assert any objections to prosecution that she might have under the Sixth Amendment and/or Speedy Trial Act.

29. In addition, if the defendant is released from detention prior to sentencing, she understands that the United States will no longer be bound by this agreement if she violates any condition of her release prior to sentencing or prior to serving her sentence after it is imposed.

## ENTIRETY OF AGREEMENT

30. This document is the complete statement of the agreement between the defendant and the United States and may not be altered unless done so in writing and signed by all the parties.

Rev. 9/2021

Respectfully submitted,
SEAN COSTELLO
UNITED STATES ATTORNEY

Date:  August 14, 2025 \_\_\_          *S// Alex Lankford*_____
                                      Alex F. Lankford, IV
                                      Assistant United States Attorney


Date:  August 14, 2025_____      *S// Justin Roller*_____
                                      Justin D. Roller
                                      Assistant United States Attorney
                                      Deputy Chief, Criminal Division


   I have consulted with my counsel and fully understand all my rights with respect to the offenses charged in the Information pending against me.  I have read this Plea Agreement and carefully reviewed every part of it with my attorney.  I understand this agreement, and I voluntarily agree to it.  I hereby stipulate that the Factual Resume, incorporated herein, is true and accurate in every respect, and that had the matter proceeded to trial, the United States could have proved the same beyond a reasonable doubt.

Date: 8-25-25                      Kelley James Williamson
                                   Kelley James Williamson
                                   Defendant


   I am the attorney for the defendant.  I have fully explained her rights to her with respect to the offenses charged in the Information in this matter.  I have carefully reviewed every part of this Plea Agreement with her.  To my knowledge, her decision to enter into this agreement is an informed and voluntary one.  I have carefully reviewed the Factual Resume, incorporated herein,

14

with the defendant and to my knowledge, her decision to stipulate to the facts is an informed,

intelligent and voluntary one.

Date: 8/25/15

James M. Byrd
Attorney for Defendant

Rev. 9/2021

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **CRIMINAL NO. 25-CR-** |
| | ) | |
| KELLEY JAMES WILLIAMSON | ) | |

## FACTUAL RESUME

The defendant, **KELLEY JAMES WILLIAMSON** ("**WILLIAMSON**"), admits the allegations of Count One and Two of the Information.

## ELEMENTS OF THE OFFENSE

**WILLIAMSON** understands that to prove a violation of Title 18, United States Code, Section 1344(2), as charged in Count One of the Information, the United States must prove beyond a reasonable doubt:

(1) The Defendant knowingly carried out or attempted to carry out schemes to get money in the custody of a financial institution by use of false or fraudulent pretenses, representations, or promises;

(2) The false or fraudulent pretenses, representations or promises were material;

(3) The defendant intended to defraud the financial institution; and

(4) The financial institution was federally insured.

**WILLIAMSON** understands that to prove a violation of Title 18, United States Code, Section 1028A(a)(1), as charged in Count Two of the Information, the United States must prove beyond a reasonable doubt:

(1) The defendant knowingly transferred, possessed, or used another person's means of identification;

(2) Without lawful authority; and

1

Rev. 9/2021

(3)    During and in relation to committing a felony enumerated in 18 U.S.C. § 1028A(c)(5), namely, Bank Fraud, in violation of 18 U.S.C. § 1344(2).

## OFFENSE CONDUCT

**WILLIAMSON** admits in open court and under oath that the following statement is true and correct and constitutes evidence in this case. This statement of facts is provided solely to assist the Court in determining whether a factual basis exists for **WILLIAMSON's** plea of guilty. The statement of facts does not contain every fact known to **WILLIAMSON** and to the United States concerning the defendant's involvement in the charges set forth in the plea agreement. All dates, amounts, and locations referenced below are approximations. All introductory paragraphs, pseudonyms, and acronyms referenced in the Information are correct and incorporated herein by reference.

As further detailed below, **WILLIAMSON** admits that she knowingly carried out or attempted to carry out schemes to get money in the custody of a financial institution, that is, Regions Bank ("Regions"), from accounts held by her employer, by use of false and fraudulent pretenses, representations, or promises, which were material. The defendant further admits that she intended to defraud Regions, and that Regions was federally insured by the FDIC.

## COUNT ONE: § 1344(2) FRAUD SCHEME

"Company A" and "Company A-1" are generic names for the affiliated business victims. For 20 years, **WILLIAMSON** was Company A's Manager and Payroll Clerk, with full access to Company A and Company A-1's bank accounts.

On November 15, 2024, Company A's Controller saw unauthorized payments to **WILLIAMSON** from Company A-1's Regions account. This caused officials at the companies to begin an internal investigation of other activity in its bank accounts.

Company A held a Regions account ending in 3949. In November 2024, when it began the investigation, Company A's President sought to obtain from copies of its statements from that account back to its opening in 2013. Regions informed the President it only had electronic statements from 2017 and after. However, Company A had hard copies of statements from 2014. A review of those statements revealed that in 2014, **WILLIAMSON** made other ACH payments to herself from Company A's Regions account ending in 3949, which totaled $109,882.35.

When **WILLIAMSON** made the ACH payments to herself from Company A's Regions 3949 account, she made material and false representations to Regions that she was authorized to receive Company A's funds, and thereby intended to defraud and defrauded Company A of its funds, which were in Regions' custody and control. At all times material to Count One, Company A's funds on deposit at Regions were insured by the FDIC.

In total, **WILLIAMSON** conducted more than 200 unauthorized electronic ACH transactions to herself from the Regions account ending in 3949, between January 30, 2014, and June 12, 2023, which totaled $1,309,382.35. The only ACH transactions done through the account were **WILLIAMSON's**. $1,309,382.35 is the actual total loss suffered by Company A for the scheme charged in Count One.

As relevant conduct regarding Count One, from August 6, 2021, until November 13, 2024, **WILLIAMSON** generated $336,308.50 of additional fraudulent ACH transfers from Company A's Regions account to her personal Regions accounts. **WILLIAMSON** admits that she

3

intended to defraud and defrauded Regions through false pretenses, representations, and promises by representing to it she was authorized to receive the ACH transfers, as alleged in Count One.

## COUNT TWO: § 1028A(a)(1): AGGRAVATED IDENTITY THEFT

Once Company A's Controller saw unauthorized payments to **WILLIAMSON** from Company A-1's Regions account ending in 1154, she began to investigate the scope of the loss. The Controller found eight fraudulent and unauthorized checks, all made payable to **WILLIAMSON**. One of the checks was dated May 9, 2024, for $60,000.00. The checks purported to be signed by the Company A's President. Ultimately, **WILLIAMSON** confessed to Company A's attorney, who reported her conduct to the U.S. Secret Service. During the Secret Service's investigation, Company A's President told it that her signature stamp was only authorized for business use, and that she neither hand-signed nor used her stamp to sign the checks payable to **WILLIAMSON**. **WILLIAMSON** admits that she used the President's means of identification, namely, her name and signature, and signature stamp, to falsely and materially misrepresent to Regions that she was authorized to receive Company A-1's funds, which were in the custody and control of Regions, in violation of 18 U.S.C. §1344(2). In conclusion, **WILLIAMSON** admits that on May 9, 2024, she knowingly transferred, possessed, or used another person's means of identification, namely, President A.R.N.'s name and signature, without lawful authority, to write a check payable to herself for $60,000.00, during and in relation her commission of Bank Fraud, in violation of 18 U.S.C. §1344(2). In total, **WILLIAMSON** wrote eight checks payable to herself on Company A-1's account totaling $222,500.00.

Company A's attorney interviewed **WILLIAMSON**, who admitted to embezzlement from Company A. In the interview, **WILLIAMSON** acknowledged that she was not authorized to write

checks or transfer funds to herself. **WILLIAMSON** used QuickBooks as a tool to create fraudulent checks payable to herself by which she stole the money.

Finally, the grand total actual loss to Company A is calculated as follows:

$1,309,382.35 (Count One actual loss)
+$336,308.50 (Additional ACH payments – relevant conduct)
$1,645,690.85

The grand total actual loss to Company A-1 related to Count Two is $222,500.00.

The combined total actual loss is $1,868,190.85.

## SENTENCING AGREEMENTS

The parties agree to the following:

**WILLIAMSON** admits that in addition to the check she wrote payable to herself for $60,000.00 on Company A-1's account ending in 1154, which is the predicate for the offense charged in Count Two, she wrote and mobile-deposited another $162,000.00 in such checks, until the conclusion of the scheme in November 2024. **WILLIAMSON** agrees that this additional criminal conduct is relevant conduct to Count Two as that term is defined under §1B1.3, *USSG*. **WILLIAMSON** agrees to pay restitution for her acts that constitute relevant conduct, which makes the total actual loss for Count Two $222,500.00.

**WILLIAMSON** should receive a two-level enhancement on Count One for stealing more than $1,000,000 in "gross receipts" from one or more financial institutions because of the offense. *USSG* § 2B1.1(b)(17)(A). Gross receipts are defined in Application Note 13(B) as "[A]ll property, real or personal, tangible or intangible, which is obtained directly or indirectly as a result of such offense."

Rev. 9/2021

**WILLIAMSON** should receive another two-level enhancement on Count One because she was a managerial employee who abused a position of private trust in Companies A and A-1, which gave her access to its bank accounts. Her abuse of her position of private trust significantly facilitated the commission or concealment of the offense charged in Count One, as she targeted Company A and Company A-1's bank accounts with large amounts of funds and which were not as likely to be noticed. *USSG* § 3B1.3.

AGREED TO AND SIGNED.

Respectfully submitted,

SEAN COSTELLO
UNITED STATES ATTORNEY

Date: August 14, 2025      *S// Alex Lankford*
                            Alex F. Lankford, IV
                            Assistant United States Attorney


Date: August 14, 2025      *S//Justin Roller*
                            Justin D. Roller
                            Assistant United States Attorney
                            Deputy Chief, Criminal Division


Date: 8-25-25              Kelley James Williamson
                           Defendant


Date: 8-25-25              James M. Byrd
                           Attorney for Defendant

6

Rev. 9/2021